# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# ATHENS DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** <br><br> v. <br><br> **GREGORY O'NEAL WADE,** <br><br> *Defendant.* | **CRIMINAL ACTION NO.** <br> **3:22-cr-00004-TES-CHW-1** |

### ORDER DENYING DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF ALLEGED GANG ACTIVITY

Before the Court is Defendant Gregory O'Neal Wade's Motion in Limine to Exclude Evidence of Alleged Gang Activity.[1] [Doc. 91]. The Government objects to Defendant's Motion. [Doc. 104]. For the reasons discussed below, the Court **DENIES** Defendant's Motion. [Doc. 91].

### PROCEDURAL BACKGROUND

On February 8, 2022, the Government obtained a multi-count indictment charging Defendant and two Co-Defendants, Johnathan Edward Brown ("Brown") and D'Angelo Caleb Perkins ("Perkins"), with several counts of conspiracy to distribute

---

[1] Specifically, Defendant seeks to exclude "any reference to [D]efendant being a member of, involved in, hold a leadership role in, or in any way participate in the [1831] Piru Bloods or any other alleged gang," "any information about the [1831] Piru Bloods or their origin," and "references to law enforcement agents involved in this case as being detached to 'Federal Bureau of Investigation Middle Georgia Safe Streets Gang Task Force.'" [Doc. 91, p. 6].

various drugs as well as weapons charges.[2] [Doc. 1, pp. 1–3]. On March 29, 2022, Defendant entered a plea of not guilty. [Doc. 11]; [Doc. 14]. On March 31, 2022, Judge Weigle granted the Government's Motion for Detention Pending Trial. [Doc. 9]; [Doc. 18]; [Doc. 19]; [Doc. 20]. Defendant remains incarcerated without bond. [Doc. 90, p. 1].

## FACTUAL BACKGROUND[3]

In 2018, the FBI's Safe Streets Gang Task Force and the Athens-Clarke County Police Department (ACCPD) Gang Unit began investigating Defendant Wade, Defendant Brown, and other members of the 1831 Piru Bloods, a violent street gang that traffics large amounts of illegal narcotics in the Athens area. In April 2021, the Court authorized a wiretap of Defendant Wade's cell phone and Instagram account. Law enforcement agents intercepted conversations revealing that Defendant Wade and others were trafficking illegal narcotics in Athens and that they distributed drugs from Defendant Wade's home. The conversations also led law enforcement agents to believe that they kept multiple firearms there, too.

On July 13, 2021, GBI Special Agent Rebecca Herold applied for a warrant in the

---

[2] Perkins has not been arrested and remains a fugitive from justice.

[3] Relevant to Defendant's Motion in Limine to Exclude Evidence of Alleged Gang Activity [Doc. 91], Defendant's Co-Defendant Brown filed a Motion to Suppress evidence obtained by the Government's search of his cellphone located in Defendant Wade's apartment. [Doc. 58]. Many of the facts discussed in this Order come from the testimony of GBI Special Agent Rebecca Herold during Defendant Brown's suppression hearing on April 24, 2023. *See* [Doc. 62]. The Court finds that a preponderance of the evidence establishes these facts. *United States v. Beechum*, 582 F.2d 898, 913 n.16 (5th Cir. 1978) (citing *Lego v. Twomey*, 404 U.S. 477, 489 (1972)).

Clarke County Superior Court to search Defendant Wade's apartment at 355 Jennings Mill Parkway, Apartment 333, in Athens. *See* [Doc. 68-1]. Superior Court Judge Lawton Stephens found probable cause and signed the search warrant the same day. [Doc. 68-2, pp. 2–3]; [Doc. 58-1, pp. 26–27]. The search warrant also authorized agents to search a gray 2008 Range Rover with Georgia Tag # RWT8029 registered to Defendant. [Doc. 68-2, p. 1]. The warrant authorized the seizure of narcotics and firearms, as well as the seizure and search of any cell phones in the apartment. [*Id.* at pp. 1–3].

Agent Herold gave a seventeen-page affidavit in support of the search warrant. *See* [Doc. 68-1, pp. 1–17]. Her affidavit outlined conversations she had intercepted over Defendant Wade's phone, revealing Defendant Wade and others used his apartment to store and distribute drugs. For example, Agent Herold's affidavit stated:

> Since the interception of wire and electronic communications over [Wade's phone] began, agents have intercepted numerous voice call events where multiple people wanted to purchase narcotics from WADE including heroin, powder cocaine, crack cocaine, and marijuana while WADE was at [his apartment]. In many of these intercepted calls, WADE directed drug customers to his [apartment] and provided directions to the building number and the location of the apartment within the building. . . . Additionally, agents learned while monitoring several other calls events [*sic*] that WADE and his roommates, MARQWESE BUTLER (hereinafter "BUTLER"), Unknown Male who is the user of telephone number 954-625-0675 (hereinafter "UM-0675"), Unknown Male who is the user of telephone number 754-971-4239 (hereinafter "UM-4239") regularly maintain narcotics and cash assets at the above-described premises.

[*Id.* at 9 (emphasis added)].

On the morning of July 14, 2021, the Athens-Clarke County SWAT team executed

entry into Defendant Wade's apartment, and the Safe Streets Gang Task Force conducted the search warrant for Defendant Wade's apartment. Defendant Wade jumped out of the third-story window upon law enforcement's entry, but law enforcement officers later apprehended him. Agents identified Defendant Brown, who was on the sofa in the living room, as Unknown Male (UM-0675).

Detective Juan Guardado interviewed Defendant Brown after agents conducted the search warrant, and Defendant Brown admitted to staying at Defendant Wade's apartment for about two weeks. However, law enforcement agents found a Geico car insurance bill addressed to Defendant Brown at Defendant Wade's apartment address. They also found Defendant Brown's high school diploma and other documents bearing his name in a safe in a bedroom closet.

## MOTION IN LIMINE[4]

Defendant Wade argues that evidence related to his alleged gang membership isn't relevant to this drugs and firearms case. [Doc. 91, p. 3 (citing Fed. R. Evid. 401)]. Specifically, he argues that this evidence does "not have a tendency to make the existence of any fact that is of consequence to the determination of whether [D]efendant Wade" committed the acts in the indictment. [*Id.*]. In the alternative, Defendant Wade argues that any probative value of this evidence "is substantially outweighed by the

---

[4] Although Defendant Wade made this Motion, this Order likely applies to both Defendants Wade and Brown.

4

danger of unfair prejudice, confusion of the issues, or misleading the jury." [*Id.*]. Defendant's argument fails.

In its Response in Opposition to Defendant's Motion in Limine, the Government proposed significantly limiting the gang evidence at trial through the testimony of Agent Herold to the following specific areas:

1. Wade and Brown are affiliated with the same gang, the Bloods.

2. Bloods members or affiliates often write in an unorthodox manner by replacing the letter "C" with a "B," or otherwise placing an "X" through the "C," to avoid using the letter of the Bloods' rival gang, the Crips.

3. 1831 Piru Bloods' territory in Athens, which they referred to as the "Trenches," was where the gang frequently sold illegal drugs.[5]

[Doc. 104, p. 8].

As the Court and the parties discussed at the final pretrial conference, this is not going to be a gang case. *See* [Doc. 116]. The Court will limit evidence related to both Defendants' alleged gang activity. *United States v. LaFond*, 783 F.3d 1216, 1222 (11th Cir. 2015) ("Although the evidence was prejudicial because membership in [a gang] is likely to provoke strong antipathy, the district court lessened the prejudicial impact when it repeatedly instructed the jury to consider the evidence for only the limited purpose of

---

[5] The Government believes it would be appropriate for Agent Herold to provide very limited background information concerning the 1831 Piru Bloods in Athens to provide context for this evidence. [Doc. 104, p. 8].

proving intent and motive." (internal citations and quotations omitted)). But, the Government will be allowed to present some evidence of the Defendants' alleged gang activity in order to prove the existence of a conspiracy between them and to provide some relevant factual context. The Government plans to proceed on a theory of joint constructive possession to prove that both Defendant Wade and Defendant Brown possessed the drugs that the Government seized from Defendant Wade's apartment. To do so, the Government will attempt to show that Wade and Brown were not simply roommates.

Eleventh Circuit case law supports the admission of gang-association evidence to show conspiracy or a relationship among defendants. *United States v. Bradberry*, 466 F.3d 1249, 1253–54 (11th Cir. 2006) (holding that evidence of defendant's gang membership provided context for the circumstances surrounding the crime he committed, but "did not simply imply that [he] was a bad person or that, by virtue of being a gang member, he knowingly possessed a gun"); *United States v. Ross*, 33 F.3d 1507, 1525 n.31 (11th Cir. 1994) (uncharged acts of gang violence admissible as intertwined with, and probative of, conspiracy charge); *United States v. Harrell*, 737 F.2d 971, 978 (11th Cir. 1984) (gang evidence important in understanding existence, motives, and object of drug-trafficking conspiracy and means through which it was conducted); *see also United States v. Archuleta*, 737 F.3d 1287, 1294 (10th Cir. 2013) (stating that gang-affiliation testimony is admissible in cases where conspiracy is charged "to prove the existence of a conspiracy

and to show the basis of the relationship between the defendant[s] and witnesses who participated" in the wrongful activity).

Of course, the Court recognizes that evidence of a defendant's gang membership necessarily carries a potential for unfair prejudice. However, the Court is unconvinced that the probative value of the evidence for the purpose of proving conspiracy will be outweighed by a substantial likelihood of unfair prejudice or that gang-related evidence will mislead the jury or cause confusion of the issues. *See* Fed. R. Evid. 403; *United States v. Wilson*, 634 F. App'x 718, 739 (11th Cir. 2015) (holding that expert testimony about defendant's gang activity "could have served only to clarify the gang references, symbols, and terminology present in the testimony and other evidence that had come before it").

Accordingly, the Court **DENIES** Defendant's Motion in Limine to Exclude Evidence of Alleged Gang Activity [Doc. 91]. However, consistent with the Court's comments and admonitions at the hearing, the Court will remain vigilant in ensuring that the gang-related evidence is relevant and limited, and it reminds the Government of its agreement and pledge to do the same.

**SO ORDERED**, this 15th day of June, 2023.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**
